ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Craig Lashoun McBeath was indicted for the murder of Shannon Lee Tor-rence (Shannon), while engaged in the commission of a robbery, and for the kidnapping of Shannon. McBeath, along with Isaac Nelson, was tried in the Scott County Circuit Court for the capital murder and kidnapping of Shannon. The jury convicted McBeath of simple- murder, a lesser offense, and kidnapping.- McBeath was sentenced to life for the murder and to forty years for the kidnapping, with the sentences to run consecutively, all in the custody of the Mississippi Department of Corrections. Finding error with the kidnapping sentence, we affirm in part and remand in part.
 

 FACTS
 

 ¶ 2. On February 23, 2007, Shannon was declared missing. Three days later, Chief Deputy Roger Thomspon and deputies Gerald Greer and Billy Patrick recovered Shannon’s body in a wooded area in the Midway community in Scott County. His body was unclothed and a plastic bag was taped around his head. On October 25, 2007, Craig Lashoun McBeath, was indicted by a Scott County grand jury on the counts of capital murder and kidnapping.
 

 ¶ 3. Shannon’s mother, Mary Carpenter, testified that on the day her son went missing, he was a seventeen-year-old senior at Scott Central High School who was living at home with her and her husband. She testified that she left for work that morning at 6:15 a.m. and that she saw Shannon asleep in bed. He called her when she arrived at work and told her that he was up and getting dressed for school. That afternoon, however, Shannon failed to call her, contrary to his usual routine. Mary called several of Shannon’s friends as well as his school to check on him, but nobody had seen Shannon. Sensing something was wrong, at approximately 2:00 p.m., she returned home.
 

 ¶4. When Mary arrived at home, she found several indications that something had gone very wrong.
 
 [1]
 
 Mary contacted the Scott County Sheriffs Department and informed them of the situation. Three
 
 *665
 
 days later, on Monday, February 26, 2007, Shannon’s body was found in a wooded area by Chief Deputy Roger Thompson and Deputy Gerald Greer. The body was “[n]ude, had a plastic bag over the head.”
 

 ¶ 5. Deputy Greer testified that, between the time Shannon went missing and the discovery of the body, he talked with several people who knew the victim. The day before the body was found, Deputy Greer and Deputy Steven Crotwell interviewed McBeath for the first time. McBeath was read his
 
 Miranda
 
 rights; he executed a waiver of his rights; and he told the deputies that he had been with Shannon on the day Shannon had disappeared, but he claimed he had no idea of his whereabouts.
 

 ¶ 6. The day after Shannon’s body was found, Deputy Crotwell brought McBeath over from the jail. Deputy Crotwell testified that McBeath threw his hands in the air and stated, “I’m gonna[sic] tell y’all everything, I just want my mother here.” Deputy Crotwell left the interview and went to retrieve McBeath’s mother. Deputy Greer and Agent Danny Knight of the Mississippi Bureau of Investigation interviewed McBeath for the second time. Again, McBeath was informed of his rights and executed a waiver.
 

 ¶ 7. This interview was recorded and played for the jury. On the recording, McBeath confessed to putting Shannon in a headlock and choking him. McBeath also confessed that he told Nelson (McBeath’s co-defendant) to find a plastic garbage bag and some duct-tape and for Nelson to help McBeath place the bag around Shannon’s face and head.
 

 ¶ 8. Shortly thereafter, Deputy Greer was informed that Shannon’s car had been found in a parking lot at East Central Community College in Decatur, Mississippi. Deputy Greer left the McBeath interview and went to the location of the vehicle where he found and secured it. Deputy Greer then had the car towed to a garage in Morton, Mississippi, and he remained with the vehicle until Mississippi Crime Laboratory personnel arrived.
 

 ¶ 9. Dr. Steven Timothy Hayne performed the autopsy on Shannon’s body. Dr. Hayne testified that the body exhibited signs of early decomposition and there was a black plastic bag duct-taped around Shannon’s head, covering his nose and mouth. Additionally, Dr. Hayne testified that Shannon had sustained linear scrapes on his back, which signified a dragging or sliding movement.
 

 ¶ 10. Dr. Hayne concluded that Shannon died of incomplete strangulation with terminal suffocation, and “there was intent to ... induce manual strangulation with compression of the neck and that was followed by taping this individual’s nares and mouth shut[,] which would produce suffocation.” In Dr. Hayne’s opinion, the linear marks on the left side of the back indicated Shannon was alive when they were inflicted. Finally, Dr. Hayne ruled the manner of death as homicide.
 

 DISCUSSION
 

 I. Ineffective Assistance of Counsel
 

 ¶ 11. McBeath first contends that his attorney rendered constitutionally ineffective assistance of counsel. To prevail on a claim of ineffectiveness of counsel, “[a] defendant must demonstrate that his counsel’s performance was [1] deficient
 
 and
 
 [2] that the deficiency prejudiced the defense of the case.”
 
 Burnside v. State,
 
 882 So.2d 212, 216 (¶ 20) (Miss.2004) (citing
 
 Burns v. State,
 
 813 So.2d 668, 673 (¶ 14) (Miss.2001)). “Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. The focus of the inquiry must be whether counsel’s assistance was
 
 *666
 
 reasonable considering all the circumstances.”
 
 Id.
 
 (internal citations omitted). Furthermore, “[a] strong but rebuttable presumption, that counsel’s performance falls within the wide range of reasonable professional assistance, exists.”
 
 Colenburg v. State,
 
 735 So.2d 1099, 1102-03 (¶ 9) (Miss.Ct.App.1999).
 

 ¶ 12. McBeath’s challenge rests upon an allegation that his trial counsel failed to perform an adequate pretrial investigation. He claims there were witnesses available to his trial counsel for investigation and that these witnesses could have verified his defense
 
 [2]
 
 . The Mississippi Supreme Court has held that “complaints of ineffective assistance of counsel, because [an] attorney failed to make pretrial investigation and to spend more time with [client], are insufficient as a matter of law.”
 
 Ward v. State,
 
 821 So.2d 894, 900 (¶ 24) (Miss.Ct.App.2002) (citation omitted). Accordingly, McBeath’s challenge is without merit.
 

 II. Kidnapping Sentence
 

 ¶ 13. McBeath argues that the trial court imposed a sentence that exceeded the statutory maximum penalty for kidnapping. The jury found McBeath guilty of kidnapping. However, the jury did not impose a life sentence.
 

 Mississippi Code Annotated section 97-3-53 (Rev.2006) states:
 

 Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child, upon conviction shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.
 

 ¶ 14. This identical issue was raised and found to be meritorious in McBeath’s companion case,
 
 Nelson v. State,
 
 10 So.3d 898, 903 (¶ 17) (Miss.2009). In
 
 Nelson,
 
 the Mississippi Supreme Court held that the trial judge’s sentence of forty years for a kidnapping conviction was outside the statutory limits and, therefore, impermissible.
 

 ¶ 15. The statute states that if the jury fails to set the penalty as imprisonment for life, then the court shall fix the penalty at neither less than one year nor more than thirty years in the custody of the Mississippi Department of Corrections. Miss. Code Ann. § 97-3-53. The jury did not impose a life sentence. Therefore, the statute permitted the trial court to impose a sentence of neither less than one year nor more than thirty years. The trial court imposed a sentence of forty years, which exceeded the statutory maximum. We find that McBeath should be resen-tenced in accordance with Mississippi Code section 97-3-53 on his kidnapping conviction only.
 

 III. Admission of Expert Testimony
 

 ¶ 16. McBeath’s next assignment of error deals with the admission of the expert testimony of Dr. Hayne. McBeath argues that his convictions should be reversed because Dr. Hayne testified outside the scope of his expertise. Although
 
 *667
 
 McBeath objected to the admissibility of photographs of the victim’s body, a review of the record reveals McBeath never challenged or objected to the content of Dr. Hayne’s testimony. Because he did not object to the testimony, McBeath’s argument fails. The Mississippi Supreme Court has held that a failure to object is fatal for purposes of preserving error.
 
 Bogan v. State,
 
 754 So.2d 1289, 1292 (¶ 12) (Miss.Ct.App.2000) (citations omitted). Accordingly, this assignment of error is without merit.
 

 IV. Sufficiency and Weight of the Evidence
 

 ¶ 17. In his fourth and sixth assignment of errors, McBeath challenges the sufficiency and weight of the evidence. We will address each assignment individually.
 

 a. Sufficiency of the Evidence
 

 ¶ 18. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the conviction.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 
 The jury determines the weight and credibility of witness testimony.
 
 Moore v. State,
 
 933 So.2d 910, 922 (¶ 43) (Miss.2006).
 

 ¶ 19. McBeath was indicted for capital murder pursuant to Mississippi Code Annotated section 97-3-19(2)(e) (Rev.2006) based on his murder of Shannon and the underlying crime of robbery. McBeath was also indicted for the crime of kidnapping pursuant to Mississippi Code Annotated section 97-3-53.
 

 ¶ 20. After the State rested, McBeath argued his motion for a directed verdict. The trial court heard arguments from both McBeath and the State. The trial court denied the motion. In denying the motion, the trial judge noted that McBeath’s statement placed him at the scene of the crime and also placed him at Shannon’s car while Shannon was being transported. The trial judge further noted that the taking of the vehicle constituted robbery, the underlying felony, which supported the charge of capital murder. He went on to state that the testimony of Dr. Hayne regarding whether or not Shannon was alive was enough to charge properly the jury with the kidnapping instruction.
 

 ¶ 21. McBeath chose to rest his case without presenting any evidence. The jury returned a verdict and convicted McBeath of the lesser offense of simple murder, not capital murder. The jury also convicted McBeath of kidnapping Shannon.
 

 ¶ 22. Considering the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that McBeath committed the essential elements of the murder and kidnapping of Shannon. In regard to the murder, the jury heard McBeath’s confession of putting Shannon in a headlock and choking him. Further, at McBeath’s request, Nelson (McBeath’s cohort/accomplice) found a plastic garbage bag and duct tape. McBeath placed the bag around Shannon’s face, and Nelson taped the bag around Shannon’s head.
 

 ¶ 23. Dr. Hayne testified that the causes of Shannon’s death were two-fold: strangulation and suffocation, and he said that the suffocation was the “terminal event” that caused Shannon’s death. It
 
 *668
 
 was determined that a small amount of air could flow through a plastic bag. However, Dr. Hayne testified that a person could survive only a short period of time under those circumstances. Additionally, Dr. Hayne testified that Shannon had sustained linear scrapes on his back, which signified a dragging or sliding movement. The scrapes and bruises also signified that Shannon was alive at the time he sustained the injuries based on the type of bleeding. Dr. Hayne explained that, in contrast, a deceased victim would have pale linear marks with no bruises. Accordingly, we find that there was sufficient evidence for the jury to convict McBeath of murder and kidnapping. This issue lacks merit.
 

 b. Weight of the Evidence
 

 ¶ 24. Following the jury verdict, McBeath filed a motion for new trial, which the trial court denied. When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Johnson v. State,
 
 42 So.3d 53, 57 (¶ 14) (Miss.Ct.App.2010). The evidence should be weighed in the light most favorable to the verdict.
 
 Id.
 

 ¶ 25. Without restating the facts previously presented, and viewing the evidence in the light most favorable to the verdict, we cannot say that the verdict convicting McBeath of murder and kidnapping is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. McBeath confessed to choking Shannon and helping Nelson secure a plastic bag over Shannon’s head.
 

 ¶ 26. Dr. Hayne testified that the bleeding of the skin under the linear drag marks and that the bruises on Shannon’s body signified Shannon was alive at the time he sustained those injuries. He also stated that these linear marks were consistent with -dragging. After hearing all the evidence, the jury convicted McBeath of murder and kidnapping. Accordingly, we find that this issue is without merit.
 

 V. Double Jeopardy
 

 ¶ 27. McBeath additionally contends the Double Jeopardy Clause barred his prosecution for murder and kidnapping. The same issue was raised and addressed in the companion case, Nelson, 10 So.3d at 907 (¶ 36). Because
 
 Nelson
 
 revolves around the same set of facts, we will quote the supreme court’s language with regard to this issue:
 

 Murder and kidnapping have separate statutory elements, requiring different facts.
 

 In
 
 Bannister v. State,
 
 731 So.2d 583, 586 (Miss.1999), this Court held:
 

 Although the [S]tate may freely define crimes and assign punishments, it is not allowed to punish a defendant for a crime containing elements which are completely enveloped by an offense for which a defendant was previously convicted.
 
 See Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). “If an individual is charged with two offenses, and all the elements of one are included within and are part of a second greater offense,
 
 Blockburger
 
 intervenes. It charges that we compare statutory offenses, as indicated, and see whether each requires proof of a fact which the other does not.”
 
 Meeks v. State,
 
 604 So.2d 748, 751 (Miss.1992). “Even though there may be a substantial ovei'lap in the proof supporting the convictions of the different crimes, the
 
 Blockburger
 
 test is met where each offense requires proof of an element not necessary to the other.”
 
 Holly v.
 
 
 *669
 

 State,
 
 671 So.2d 32, 44 (Miss.1996) (citing
 
 Brock v. State,
 
 530 So.2d 146, 150 (Miss.1988)).
 

 [[Image here]]
 

 Nelson was charged with capital murder pursuant to Mississippi Code Annotated Section 97-3-19(2)(e) for murder and the underlying crime of robbery, which provides:
 

 (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
 

 [[Image here]]
 

 (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsen-sual unnatural intercourse with mankind, or in any attempt to commit such felonies....
 

 Miss.Code Ann. § 97-3-19(2)(e) (Rev. 2006).
 

 Nelson also was indicted for the crime of kidnapping pursuant to Mississippi Code Annotated Section 97-3-53, which provides, in part:
 

 Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child....
 

 Miss.Code Ann. § 97-3-53 (Rev.2006).
 

 The crimes of capital murder and kidnapping each require proof of an element not necessary to the other.
 
 See Bannister,
 
 731 So.2d at 586 (quoting
 
 Holly,
 
 671 So.2d at 44)
 
 (Blockburger
 
 is met when each crime “requires proof of an element not necessary to the other”). Accordingly, this issue is without merit.
 

 Nelson,
 
 10 So.3d at 907-908 (¶¶ 36-40).
 

 ¶ 28. Following the analysis and ruling of the supreme court, we find this issue is also without merit.
 

 VI. Manslaughter Instruction
 

 ¶ 29. McBeath next asserts that the trial court erred in failing to give an instruction on manslaughter by culpable negligence. McBeath never requested that the instruction for manslaughter be given. As has been held numerous times before, “[i]t is well established that [e]rror cannot be predicated on failure of the court to give instructions not requested.”
 
 Blocker v. State,
 
 809 So.2d 640, 646 (¶ 23) (Miss.2002). However, for the sake of discussion, we will address the merits of the claim.
 

 ¶ 30. There is no evidentiary basis for the request of a manslaughter-by-culpable-negligence instruction. The State’s evidence showed the victim died of strangulation and suffocation by way of a plastic bag duct-taped over his head. Further, McBeath has failed to offer any evidence justifying an instruction for manslaughter by culpable negligence. “We have held that there must be some evidentiary support to grant an instruction for manslaughter.”
 
 Goodin v. State,
 
 787 So.2d 639, 656 (¶ 57) (Miss.2001). This issue is procedurally barred.
 

 VII. Cumulative Error
 

 ¶ 31. McBeath contends that, “in the event this Honorable Court hold[s] that each of the aforesaid claims raised, stand
 
 *670
 
 ing alone, does not constitute cause to grant relief, the cumulative effect of each acted to deprive [McBeath] of his constitutional right to a fair trial.... ”
 

 ¶ 82. We find the discussion and analysis above demonstrate the futility of McBeath’s final argument. As we have stated before, “[t]his Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal.”
 
 Dunigan v. State,
 
 915 So.2d 1063, 1072 (¶ 41) (Miss.Ct.App.2005) (citing
 
 Genry v. State,
 
 785 So.2d 186, 201 (¶78) (Miss.1999)). “However, where there [is] no reversible error in any part, there is no reversible error to the whole.”
 
 Id.
 
 This issue is without merit.
 

 ¶ 33. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED, CONVICTION OF KIDNAPPING IS AFFIRMED, AND SENTENCE OF FORTY YEARS FOR KIDNAPPING IS VACATED; AND THIS CASE IS REMANDED FOR RE-SENTENCING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. MYERS, P.J., NOT PARTICIPATING.
 

 [1]
 

 . Although Shannon had been planning to spend the weekend with his girlfriend, he had failed to pack his clothes. Furthermore, the family's house cats had been left outside. The back door was unlocked, and every light in the house was on. Additionally, Shannon's cell phone was on the counter with forty-three missed calls. The house was in general disarray, and a pistol, as well as Shannon’s car, was missing.
 

 [2]
 

 . Throughout his brief, McBeath never specifies what his defense was or could have been.