# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-00731-SCT

*ROBERT STANLEY ROWLAND*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2008 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT STANLEY ROWLAND (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 07/29/10 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Robert Rowland and two codefendants pleaded guilty to two counts of armed robbery and two counts of capital murder stemming from a 1979 incident. Rowland filed the instant petition for post-conviction collateral relief in 2007, claiming that the convictions and sentences for armed robbery violate his fundamental right against double jeopardy, as they were the underlying felonies for the capital-murder convictions. The trial court dismissed

Rowland's petition as time-barred, and the Court of Appeals affirmed. We granted certiorari and now reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 16, 1979, eight men – Pat Bolton, James Campbell, Billy Floyd, Joe Floyd, Paul Hughes, Steve McHann, G.W. Putman, and O.B. Singleton – gathered at the Leflore County Country Club to play poker. During the game, three masked men armed with shotguns, later identified as Robert Rowland, Donald Keeton, and Keith Ouzts, entered the country club and robbed the men. During the armed robbery, the assailants shot and killed both James Campbell and Paul Hughes.

¶3. A Leflore County grand jury indicted the three men on four counts each: (1) armed robbery of Pat Bolton, (2) armed robbery of O.B. Singleton, (3) capital murder of James Campbell while "in the commission of the crime of armed robbery of Pat Bolton and others," and (4) capital murder of Paul Hughes while "in the commission of the crime of armed robbery of O.B. Singleton and others." Rowland, Keeton, and Ouzts each pleaded guilty to all four crimes.[1] The State recommended sentences of life imprisonment for each of the two capital murder charges and twenty-four years for each of the two robbery charges, with the sentences to run consecutively. The trial court sentenced the three defendants according to the State's recommendations.

_____

[1] We note that the Court of Appeals' majority opinion erroneously states that the "guilty plea colloquy is not part of the record." *Rowland v. State*, 2009 WL 1593038, *2 n.2 (Miss. Ct. App. June 9, 2009). The plea colloquy is attached as "Exhibit A" to Rowland's petition for post-conviction relief in the record.

2

¶4.     On November 13, 2007, Rowland filed a petition for post-conviction collateral relief in the Washington County Circuit Court.[2]  In his petition, Rowland claimed that "the trial court violated the prohibitions of the double-jeopardy clause of both the United States and Mississippi Constitutions by convicting Rowland of the capital murder and the underlying felony of armed robbery, effectively convicting and sentencing Rowland twice for the crime of armed robbery."  Rowland argued that, because his armed-robbery convictions violated the double-jeopardy clause, his sentences for armed robbery were illegal.[3]  Although his petition was filed more than twenty-eight years after sentencing, Rowland argued that his claim should be excepted from the procedural bars of the Uniform Post-Conviction Collateral Relief Act ("UPCCRA") because it involved a fundamental constitutional right.  Rowland noted that if his armed-robbery convictions were vacated, he would be eligible for parole on the two capital-murder sentences.

¶5.     On January 11, 2008, the circuit court dismissed  Rowland's petition with prejudice, finding that it was time-barred by the UPCCRA's three-year statute of limitations.  *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2007).  The circuit judge also noted that dismissing the motion without a hearing was proper, because it plainly appeared from the face of the motion that Rowland was not entitled to any relief, and he declined to address the merits of Rowland's motion.

---

[2]The charges against the defendants were transferred from Leflore County to Washington County due to pretrial publicity.

[3]Rowland does not challenge his convictions for capital murder.

3

¶6.    Rowland appealed, and we assigned the case to the Court of Appeals. In a split decision, the Court of Appeals affirmed, finding that Rowland's claims were time-barred and barred as a successive writ. *Rowland*, 2009 WL 1593038, at *8 (six-four decision). The Court of Appeals also found that Rowland's claims were barred by Mississippi Code Section 99-39-21(1) which states:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1) (Rev. 2007).[4]

¶7.    The Court of Appeals acknowledged that this Court has held that errors affecting "fundamental rights" may be excepted from procedural bars. *Rowland*, 2009 WL 1593038 at *4. The Court of Appeals also acknowledged that this Court has deemed the right to be free from double jeopardy a "fundamental right." *Id.* (citing *Graves v. State*, 969 So. 2d 845, 846-47 (Miss. 2007)). However, the majority chose not to except Rowland's claim from the procedural bars, based on this Court's use of the word "may" in *Luckett v. State*, 582 So.

---

[4]The Court of Appeals opined that "a valid guilty plea operates as a waiver of all non-jurisdictional rights or defects which include rights secured by the Fifth, Sixth, and Fourteenth Amendments . . ." *Rowland*, 2009 WL 1593038, at *5. Thus, the Court of Appeals reasoned, if a defendant, by pleading guilty, can waive several of his "fundamental" constitutional rights, then "there is no logical reason to distinguish double jeopardy from the same status." *Id.* This analysis is incorrect. We note our language in *Willie v. State*: "'a plea of guilty to a charge does not waive a claim that–judged on its face–the charge is one which the State may not constitutionally prosecute.'" *Willie*, 738 So. 2d 217, 219 (Miss. 1999) (quoting *Menna v. New York*, 423 U.S. 61, 63 n.2, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975)).

2d 428, 430 (Miss. 1991) ("Errors affecting fundamental constitutional rights *may* be excepted from procedural bars which would otherwise prohibit their consideration . . . . ") (emphasis added).  In so holding, the Court of Appeals stated: "[T]his Court declines to exercise whatever discretionary authority it may have to consider otherwise time-barred issues pursuant to the "fundamental rights" exception." ***Rowland***, 2009 WL 1593038, at *8.  After Rowland's motion for rehearing was denied by the Court of Appeals, we granted certiorari.

## ANALYSIS

¶8.     This Court's applicable standard of review when considering the denial of a petition for post-conviction collateral relief is well settled; this Court will not disturb the factual findings of a trial court in denying the petition unless such findings are clearly erroneous. ***Moore v. State***, 986 So. 2d 928, 932 (Miss. 2008) (citations omitted).  "However, where questions of law are raised the applicable standard of review is de novo." ***Id.*** (quoting ***Lambert v. State***, 941 So. 2d 804, 807 (Miss. 2006)).

¶9.     As mentioned, the Court of Appeals declined to except Rowland's double-jeopardy claim from the procedural bars, based on this Court's language in ***Luckett*** that "errors affecting fundamental constitutional rights may be excepted from procedural bars." ***Luckett***, 582 So. 2d at 430.  We acknowledge that our jurisprudence in this area is less than consistent.  We take this opportunity to hold, unequivocally, that errors affecting fundamental constitutional rights **are** excepted from the procedural bars of the UPCCRA.

5

¶10.     A closer examination of the language in *Luckett* and the precedent upon which it

relies provides some clarity.  The *Luckett* Court relied on this Court's earlier decision in

*Smith v. State*, 477 So. 2d 191 (Miss. 1985) (a post-UPCCRA case).  *See Luckett*, 582 So.

2d at 430.  The *Smith* decision, however, provides no language that would support the

discretion gleaned by the Court of Appeals.  In *Smith*, this Court stated:

> This Court has repeatedly and consistently held that "post-conviction relief in
> Mississippi is not granted upon facts and issues which could or should have
> been litigated at trial and on appeal."  Post-conviction proceedings are for the
> purpose of bringing to the trial court's attention facts not known at the time of
> judgment.  Questions not alleged and raised at trial and/or on direct appeal are
> procedurally barred and may not be litigated collaterally in a post-conviction
> environment.
>
> As the state suggests, it is noted that this issue was not raised on direct appeal,
> nor does the motion here show such facts as are necessary to demonstrate that
> this claim is not procedurally barred.
>
> [T]his Court has previously held that errors affecting fundamental rights **are**
> exceptions to the rule that questions not raised in the trial court cannot be
> raised for the first time on appeal.  *Read v. State*, 430 So. 2d 832 (Miss. 1983);
> *Brooks v. State*, 46 So. 2d 94 (1950). It is noted that in the case sub judice that
> the defense counsel failed to raise the sentence issue on appeal, but that this
> defendant is raising the issue in his pro se post-conviction motion to correct
> sentence. This Court recognizes that citizens may not be deprived of
> constitutional rights without due process of law and that due process requires
> reasonable advance notice and a meaningful opportunity to be heard. *Read*,
> supra.  An analysis of the indictment in this case, together with the foregoing
> transcript of the sentencing hearing, clearly show a denial of due process in
> sentencing.  The comparison of a seven year sentence, as opposed to a life
> sentence, without probation or parole is too significant a deprivation of liberty
> to be subjected to a procedural bar.

*Smith*, 477 So. 2d at 195 (citations omitted) (emphasis added).  *Smith* clearly establishes that

a procedural bar cannot be applied in the face of "errors affecting fundamental rights,"

6

because such a violation "is too significant a deprivation of liberty to be subjected to a procedural bar." ***Id.***

¶11.    Delving further into the precedent upon which this Court relied in ***Smith***, it is even more evident that no discretion is afforded when deciding whether to except a claim involving a fundamental constitutional right from procedural bars.  In ***Read v. State***, 430 So. 2d 832 (Miss. 1983), this Court held that, when it comes to enforcing procedural rules to bar litigation of constitutional rights, courts should "be faithful stewards" and "keep the spirit of ***Brooks*** alive." ***Id.*** at 836-37.  This "spirit of ***Brooks***" refers to the reasoning for that decision, which mandated the fundamental-rights exception to procedural bars.  In ***Brooks v. State***, 46 So. 2d 94 (1950), this Court stated:

> Constitutional rights in serious criminal cases rise above mere rules of procedure. Errors affecting fundamental rights **are** exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal.
>
> Besides, no person can be deprived of his liberty except by due process of law. Section 14, Article 3, Mississippi Constitution. This prohibition is intended to guarantee the protection of fundamental and constitutional rights, so that a fair trial shall result.  Every person is entitled to a fair and impartial trial, and the dispensing of justice is the object of courts. Thus, where fundamental and constitutional rights are ignored, due process does not exist, and a fair trial in contemplation of law cannot be had . . . .
>
> [W]e repeat that this is a most unusual case. We neither condone nor reward inaction. But we cannot affirm where due process has been so lacking that a conviction has resulted without proper consideration of constitutional and fundamental rights.

***Id.*** at 97 (citations omitted) (emphasis added).

7

¶12.    Thus, in light of the foregoing precedent, we hold that errors affecting fundamental constitutional rights **are** excepted from the procedural bars of the UPCCRA.  We find that this Court's use of "may" in *Luckett* was error, as no discretion previously existed under *Brooks* and its progeny.  We also note that since *Luckett*, this Court has held on several occasions that errors affecting fundamental rights except petitions from the procedural bars of the UPCCRA, *without discussion* of whether discretion is afforded or should be applied. *See, e.g., Ivy v. State*, 731 So. 2d 601, 603 (Miss. 1999) (holding that Ivy's petition alleging an illegal sentence was not time-barred); *Kennedy v. State*, 732 So. 2d 184, 186-87 (Miss. 1999) (holding that Kennedy's petition alleging an illegal sentence was not time-barred or barred by *res judicata*); *Fuselier v. State*, 654 So. 2d 519, 522 (Miss. 1995) (holding that Fuselier's failure to raise his double-jeopardy argument at the trial level was not fatal to his petition, as the right to be free from double jeopardy is a fundamental right).

¶13.    We acknowledge, however, that this Court has decided cases that conflict with our holding today.  *See, e.g., Mann v. State*, 490 So. 2d 910, 911 (Miss. 1986) (holding that several of Mann's post-conviction claims (including double jeopardy) were barred because he failed to raise them at trial); *Jennings v. State*, 700 So. 2d 1326, 1328 (Miss. 1997) (holding that Jennings' double-jeopardy claim was procedurally barred because she failed to raise it at trial); *Pinkney v. State*, 757 So. 2d 297, 298-99 (Miss. 2000) (holding that Pinkney's double-jeopardy and excessive-sentence claims were both time-barred and waived because he did not raise them at trial).  To the extent that *Luckett*, *Mann*, *Jennings*, and *Pinkney* conflict with our holding today, they are hereby expressly overruled.

8

¶14. We find the question of whether the protection against double jeopardy is a fundamental right an easy one, as this Court has stated unequivocally that it is. In *Graves v. State*, this Court stated: "However, *as the protection against double jeopardy is a fundamental right*, we will not apply a procedural bar and will address the merits of Graves's claim." *Graves v. State*, 969 So. 2d 845, 846-47 (Miss. 2007) (emphasis added). *See also*, *Fuselier v. State*, 654 So. 2d 519, 522 (Miss. 1995) (same); *Kennedy v. State*, 732 So. 2d 184, 186-87 (Miss. 1999) (right to be free from an illegal sentence is fundamental).

¶15. Thus, we find that Rowland's arguments – insofar as they implicate his fundamental constitutional right to be free from double jeopardy – are excepted from the procedural bars of the UPCCRA. We therefore reverse the decisions of the trial court and the Court of Appeals and remand the petition to the trial court for an evidentiary hearing regarding whether Rowland's convictions for armed robbery violate the double-jeopardy clause.

## CONCLUSION

¶16. Based on the foregoing analysis, we reverse the decisions of the Washington County Circuit Court and the Court of Appeals. Errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA. The right to be free from double jeopardy is a fundamental right. This matter is hereby remanded to the Washington County Circuit Court for an evidentiary hearing regarding whether Rowland's convictions for armed robbery violate the double-jeopardy clause. The circuit court should consider appointing counsel to represent Rowland.

¶17. **REVERSED AND REMANDED.**

9

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, P.J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶18.   I agree with the majority that errors affecting fundamental constitutional rights are excepted from the procedural bars of the Uniform Post-Conviction Collateral Relief Act ("UPCCRA"). Miss. Code Ann. § 99-39-21 (Rev. 2007). I do not think, however, that there is any compelling reason to remand this case to the trial court for an evidentiary hearing, because no additional proof is required for a sound judicial determination that Rowland's convictions for armed robbery run afoul of the federal and state constitutional provisions concerning former jeopardy. Therefore, I respectfully dissent in part and would grant Rowland post-conviction relief by vacating the two armed robbery convictions.

¶19.   The issue of whether Rowland has been subjected to double jeopardy is properly before the Court as a question of law, and should be given *de novo* review. ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999). In other words, we review the issue anew, without deference to the trial court's judgment. ***Univ. of S. Miss. v. Williams***, 891 So. 2d 160, 167-68 (Miss. 2004) (citing ***N. Elec. Co. v. Phillips***, 660 So. 2d 1278, 1281 (Miss. 1995)). Thus, the trial court's failure to address the issue is of no consequence to its resolution by this Court. When a petitioner is entitled to judgment as a matter of law, this Court has the authority and the duty to grant the petition and render the appropriate judgment. Indeed, remanding Rowland's case to the trial court for an evidentiary hearing will only hinder

10

judicial economy, and, in my humble judgment, will amount to a buck-passing exercise by us. *Duhart v. State*, 981 So. 2d 1056, 1058 (Miss. Ct. App. 2008).

¶20.    Determining whether Rowland was punished more than once for the same armed robbery is easily accomplished at the appellate level, and the only evidence needed to address the issue can be found by examining the four indictments included in the record. Two homicides and an armed robbery occurred at the Leflore County Country Club on February 16, 1979. Three men, including the petitioner, Robert Stanley Rowland, were arrested and indicted in connection with those tragic and brutal events. The grand jury returned four joint indictments against those three men. Two of the indictments were for capital murder, for the deaths of James Campbell and Paul Hughes, respectively, in which armed robbery was pled as the felony underlying the homicides. It was alleged that the death of Campbell was committed during the armed robbery of "Pat Bolton and others," and that the death of Hughes was committed during the armed robbery of "O.B. Singleton and others." The two remaining indictments undertook to charge the three defendants, jointly, with two counts of armed robbery, one from Pat Bolton and one from O.B. Singleton.

¶21.    Although the four indictments were drafted in a manner that sought to turn one robbery into multiple robberies, it is clear that there was but one robbery. Thus, the robbery that was pled as the underlying felony in the two capital murder indictments was the same robbery as that pled in the two separate armed robbery indictments. This clearly violates the constitutional prohibitions against multiple punishments for the same offense. U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy

11

of life or limb"); Miss. Const. art. 3, § 22 ("[n]o person's life or liberty shall be twice placed in jeopardy for the same offense").

¶22.    In *Meeks v. State*, 604 So. 2d 748, 750 (Miss. 1992), the defendant was convicted on four counts: (1) capital murder in the commission of a kidnapping, (2) kidnapping, (3) burglary, and (4) assault. Meeks appealed to this Court after the trial court denied his motion for judgment of acquittal notwithstanding the verdict on the kidnapping charge. *Id*. We held that Meeks could not be punished for "capital murder/kidnapping by a sentence of life imprisonment and thereafter by a consecutive thirty year sentence for . . . kidnapping." *Id.* at 751. In so deciding, this Court explained, "where no further evidence is needed to establish the lesser offense, once the prosecution has proved the greater offense, punishment for the lesser is barred. Put another way, the defendant may be convicted and punished for one of those offenses – the greater or the lesser included – but not both." *Id.* at 751-52 (citations omitted). *See also* ***Fuselier v. State***, 654 So. 2d 519, 522 (Miss. 1995) ("Convicting Fuselier of both felony murder and the underlying felony was also a violation of Fuselier's Fifth Amendment right against double jeopardy.").

¶23.    An application of the reasoning in *Meeks* to the case at bar leads to the inescapable conclusion that Rowland's two convictions for capital murder (with armed robbery as the underlying felony of both counts), plus two convictions for the same armed robbery constitute not one, but two instances of double jeopardy. In other words, here we are presented with a clear case of *triple* jeopardy.

12

¶24. If there were any doubt of this, it is removed when we consider the statement of the district attorney, Mr. Everett, when he outlined the State's theory of the cases, thus providing a factual basis for the trial court's acceptance of the defendants' guilty pleas, at the plea and sentencing hearing:

BY MR. EVERETT:

On the night of February 16, 1979, a group of citizens was at the Leflore County Country Club, a short distance outside of Greenwood in Leflore County, Mississippi, at a social event, that social event being a poker game, when three individuals, masked and dressed similarly with their identification completely concealed and armed with shotguns, entered the room and proceeded to perform *an armed robbery* with firearms *of this group* of individuals. They had the men line up against the wall of the building or the room with their backs toward the defendants. And as one of the defendants was reaching across the table where the game had been held to pick up *the* money, a shotgun then discharged and shot James Campbell in the back, and killing James Campbell. The shotgun then discharged again and the shot went into the ceiling of the room. At that time, Paul Hughes, one of the participants in the game, broke and ran to get out of the place and he was shot in the back and killed by one of the individuals in *the robbery* . . . .

(Emphasis added.)

¶25. The district attorney's description of *an armed robbery,* and *the robbery* reinforce what is patently obvious from a plain reading of the four indictments: there was but one robbery. Under the factual recitation by the district attorney, to which Rowland pled guilty, the grand jury, with impunity, could have indicted Rowland for non-capital murder for the death of James Campbell, for  non-capital murder for the death of Paul Hughes, and for a single armed robbery of all of the men in the *group* mentioned by the district attorney,  from whose presence the money on the table was forcibly taken.  But when the grand jury chose

13

to combine the homicides with the robbery in order to craft the two capital murder indictments – which was the grand jury's prerogative – this foreclosed the grand jury's *separately* charging Rowland with armed robbery. ***Fuselier***, 654 So. 2d at 522.

¶26. Even without the prosecutor's statements, this Court has before it more than ample information on which to act dispositively with regard to the two armed robbery indictments. Rowland's convictions and sentences on the armed robbery charges are, and always have been, complete legal nullities. Remanding Rowland's case for an evidentiary hearing is an unnecessary redundancy because the defendant has shown enough to establish that he is entitled to immediate relief. We should, therefore, without delay, treat the robbery charges as the legal nullities that they are and order Rowland's convictions and sentences for the armed robbery offenses vacated.

**GRAVES, P.J., JOINS THIS OPINION IN PART.**